## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

NATALIE BRAHM, et al.,

        Plaintiffs,

   v.

HOSPITAL SISTERS HEALTH SYSTEMS        Case No. 3:23-cv-444
et al.,

        Defendants.

## PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' TECHNICAL EXPERT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.  INTRODUCTION .................................................................................................... 1

II.  BACKGROUND ...................................................................................................... 4

III.  ARGUMENT ............................................................................................................ 6

    A.  Legal Standard ................................................................................................ 6

    B.  Mr. Vint's opinions are irrelevant. ................................................................ 8

    C.  Mr. Vint's opinions are unreliable and risk confusion at trial. .............. 12

IV.  CONCLUSION ....................................................................................................... 16

# TABLE OF AUTHORITIES

Cases

*Bourelle v. Crown Equip. Corp.*,
  220 F.3d 532 (7th Cir. 2000) ........................................................................ passim

*Braun v. Lorillard Inc.*,
  84 F.3d 230 (7th Cir. 1996) ........................................................................ 6, 7, 15

*Chapman v. Maytag Corp.*,
  297 F.3d 682 (7th Cir. 2002) ........................................................................ passim

*Constructora Mi Casita, S de R.L. DE C.V. v. NIBCO, INC.*,
  No. 3:16-CV-565 DRL-MGG, 2020 WL 13896487 ........................................ passim

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ...................................................................................... 1, 6, 13

*Deimer v. Cincinnati Sub-Zero Prods., Inc.*,
  58 F.3d 341 (7th Cir. 1995) ........................................................................ passim

*Elcock v. Kmart Corp.*,
  233 F.3d 734 (3d Cir. 2000) ........................................................................ 9

*Gopalratnam v. Hewlett-Packard Co.*,
  877 F.3d 771 (7th Cir. 2017) ........................................................................ passim

*Haley v. Kolbe & Kolbe Millwork Co.*,
  863 F.3d 600 (7th Cir. 2017) ........................................................................ passim

*In re Ready-Mixed Concrete Antitrust Litig.*,
  261 F.R.D. 154 (S.D. Ind. 2009) .................................................................... 9

*Kirk v. Clark Equip. Co.*,
  991 F.3d 865 (7th Cir. 2021) ........................................................................ passim

*Metavante Corp. v. Emigrant Sav. Bank*,
  619 F.3d 748 (7th Cir. 2010) .................................................................... 4, 6, 13, 16

*Owens v. Auxilium Pharms., Inc.*,
  895 F.3d 971 (7th Cir. 2018) ........................................................................ 10

*Tuf Racing Prods., Inc. v. American Suzuki Motor Corp.*,
  223 F.3d 585 (7th Cir. 2000) ........................................................................ 9

*Varlen Corp. v. Liberty Mut. Ins. Co.*,
  924 F.3d 456 (7th Cir. 2019) ........................................................................ 1

*Winters v. Fru-Con Inc.*,
   *498 F.3d 734 (7th Cir. 2007)* ........................................................................................ 9

Rules

F.R.E. 403 .............................................................................................................. 1, 8, 9
F.R.E. 702 ................................................................................................................ passim

Plaintiffs respectfully move to exclude the expert report and testimony of Defendants' proposed technical expert, Mr. James Vint, pursuant to Federal Rules of Evidence ("F.R.E.") 401, 402, 403, and 702, and the standard propounded in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because Mr. Vint's proffered opinions are irrelevant to Plaintiffs' Motion for Class Certification, unreliable under F.R.E. 702, and pose a risk of substantial confusion at trial under F.R.E. 403. In support of their Motion, Plaintiffs state as follows:

## I.    <u>INTRODUCTION</u>

Defendants have proffered as their technical expert Mr. James Vint, who is a Managing Director at Secretariat International, a litigation consulting and expert services firm. However, Defendants have entirely failed to meet their burden to show the admissibility of Mr. Vint's opinions, which are wholly untethered to the facts of this case and pervasively unreliable with regard to the issues raised at class certification. *Constructora Mi Casita, S de R.L. DE C.V. v. NIBCO, INC.*, No. 3:16-CV-565 DRL-MGG, 2020 WL 13896487, at \*5 (N.D. Ind. Mar. 27, 2020) (citing *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019) (proponent of expert testimony bears the burden to prove its admissibility)). Mr. Vint's report is fatally flawed in three distinct ways:

1. ***Mr. Vint did not test Defendants' websites.*** Instead, Mr. Vint tested unrelated websites—Medicare.gov and BreakthroughT1D.org. Vint Report[1] ¶¶ 72–75, 49–55. This is fatal because, as both Dr. Shafiq and Mr. Vint agree, the operation of tracking pixels is "highly dependent" on the configuration of the pixel at issue. Shafiq Report ¶¶ 41–42, 66–71; Vint Dep. Tr.[2] at 28:11–20, 105:5–13 (agreeing configurations "can

---

[1] The Vint Report is attached as **<u>Exhibit A</u>** to the Declaration of Maverick Searle in Support of Defendants' Response in Opposition to Class Certification (Dkt. 104-1).

[2] Attached as **<u>Exhibit T</u>** to Plaintiffs' Reply in Support of Class Certification.

differ from website to website" and that transmission outcomes are "highly dependent" on configuration factors); *see Constructora*, 2020 WL 13896487, at *5–7.

2. ***Mr. Vint analyzed the wrong tracking technology.*** It is undisputed that Defendants had Universal Analytics 3 ("UA3") deployed on their websites throughout the class period. In contrast, the (non-Defendant) websites Mr. Vint tested had Google Analytics 4 ("GA4") installed—a subsequent version of the software that, as Dr. Shafiq explains, operates substantially differently than the prior version. Rebuttal Report of Zubair Shafiq[3] ¶ 21.

3. Mr. Vint has offered ***no opinions whatsoever*** on one of Plaintiffs' proposed classes— the Nationwide Prevea Mobile Application Class. *See generally* Vint Report (no discussion of mobile app tracking technology anywhere in report). Therefore, as Mr. Vint confirmed in his deposition, this class is uncontested from a liability perspective,[4] and the only liability-related expert opinion in the record regarding certification of this class is that of Plaintiffs' technical expert, Dr. Zubair Shafiq. Vint Dep. Tr. 138:2– 139:13 (acknowledging his report contains no testing on Firebase or the Prevea MyChart Android app and that he did not contest Dr. Shafiq's app-related findings).

Doubling down on these failures, in his deposition, Mr. Vint further admitted that:

1. ***Mr. Vint did not follow his own recommended testing methodology.*** In his deposition, Mr. Vint stated that there are two valid methodologies for testing the operation of tracking pixels on a particular website: testing the actual website "as it is" or "recreating

---

[3] Attached as **Exhibit U** to Plaintiffs' Reply in Support of Class Certification.

[4] Mr. Vint also devotes substantial space to his opinions regarding the Facebook Meta Pixel despite the fact Plaintiffs do not seek to certify a Facebook-related class. *See* Vint Report ¶¶ 138–41; *cf.* Expert Report of Zubair Shafiq ("Shafiq Report") ¶ 14 (testing HSHS/Prevea properties using Defendants' Google technologies and identifying baseline disclosures).

the environment" using archival materials. Vint Dep. Tr. 95:11–97:7. Mr. Vint acknowledged that Plaintiffs' expert Dr. Shafiq followed the latter methodology. *Id.* 99:2–23. Mr. Vint further acknowledged that he himself followed neither methodology here (and indeed did not test Defendants' website at all)—even though Mr. Vint testified that he has used one of the two in each of the 600 pixel-related investigations he has performed, with the exception of this matter and a handful of other hospital tracking pixel cases where he served as a testifying expert for the defense. Vint Dep. Tr. 97:8-24, 112:5–14.

2. ***Mr. Vint has no data supporting his contention that individualized settings would defeat predominance***, nor did he attempt to test or otherwise investigate that contention—despite agreeing that such investigation would be necessary to opine on the issue. Vint Dep. Tr. 133:3–134:4 (acknowledging that he could not identify how many class members' individualized settings might be in play according to him; "[i]t could be everybody or nobody").

3. ***Mr. Vint invented his own definition of whether certain data are "identifiable"*** that has no basis in his own research, academic or industry authority, or relevant law (including HIPAA). Vint Dep. Tr. 20:12–23:7, 65:10–66:2, 147:6–15 (admitting he has no authorities or research supporting his definition; is not a HIPAA expert and does not know if his definition matches HIPAA; and does not believe an IP address is an identifier notwithstanding HIPAA's listing to the contrary). Thus, by his own admission, Mr. Vint's definition of whether data is "identifiable" is based solely on his own *ipse dixit*—something plainly impermissible under Seventh Circuit precedent.

*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779–81 (7th Cir. 2017); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760–61 (7th Cir. 2010).

As shown below, all of these factors make Mr. Vint's opinions squarely inadmissible under Seventh Circuit precedent. The Court should exclude his opinions and report.

## II.    BACKGROUND

Defendants offer the October 3, 2025 Expert Report of James Vint in support of their opposition to Plaintiffs' Motion for Class Certification.

Mr. Vint opines that the web tracking ecosystem writ large exhibits individualized variability driven by user settings, device and browser differences, the presence or absence of extensions, and evolving defaults that may suppress or alter cookie behavior, and he asserts that such variability undermines common proof for class certification. Vint Report ¶¶ 11–13, 67–71, 154–56. He contends that transmissions observed in connection with Google Analytics ("GA") reflect website activity data rather than protected communications or health information and that such transmissions, in his view, cannot be correlated to a real-world identity based on the data he reviewed. Vint Report ¶¶ 63–66, 149–53. He criticizes Dr. Shafiq's identification of uniform "baseline" transmissions as allegedly insensitive to user- and device-level differences that, he says, could vary across sessions and configurations. Vint Report ¶¶ 146–48, 150–51.

To support these opinions, Mr. Vint reports that he performed forensic testing of Medicare.gov and BreakthroughT1D.org—neither of which has any affiliation with Defendants— and extrapolates from that testing to opine on the behavior of Google Analytics and Facebook's Meta Pixel on Defendants' websites. Vint Report ¶¶ 72–75, 32–35, 49–58. He further discusses hypothetical scenarios in which cookie settings, third-party cookie blocking defaults, or browser add-ons alter or suppress transmissions in ways that, he asserts, would defeat uniformity across

4

class members. Vint Report ¶¶ 77–79, 85–116, 123–25. He does not report testing the HSHS or Prevea patient portals or mobile application in their operative configurations, he does not report using HSHS or Prevea Google Analytics identifiers in any testing, and he does not present any analysis of Defendants' Google Analytics data, configurations, or anonymization settings. *See* Vint Report ¶¶ 72–75, 140–46, 149–51.

Mr. Vint also devotes a substantial portion of his report to variables specific to Facebook's Meta Pixel and Advanced Matching features, even while acknowledging that applicability depends on whether and how those technologies were deployed. Vint Report ¶¶ 32–35, 88–116, 124–25. He acknowledges that IP addresses are present in standard header information during web requests but offers no opinion based on any review of Defendants' Google Analytics anonymization settings, including whether IP masking was enabled during the class period. Vint Report ¶ 27, 140–46.

Dr. Shafiq's report, by contrast, documents his hands-on testing of historical versions of HSHS's and Prevea's websites, patient portals (MyHSHS and MyPrevea), and mobile app using Defendants' Google Analytics identifiers, as well as his analysis of the Google Analytics data produced in discovery, all of which resulted in Dr. Shafiq's conclusion that a baseline set of PHI containing identifiers and content information is uniformly transmitted across devices and browsers. Shafiq Report ¶¶ 42–47, 66–68. As Mr. Vint acknowledged in his deposition, these case- and fact-specific findings are not addressed by any case- or fact-specific testing or data analysis in Mr. Vint's report. *See* Vint Report ¶¶ 140–46, 149–53; Vint Dep. Tr. 104:9–105:13, 111:5–112:14, 118:9–14, 138:2–139:13 (admitting he did not test HSHS/Prevea's websites or patient portals, did not review Defendants' GA dashboards or settings and conducted no GA-ID-based analysis, had

no packet captures or GA data analysis tied to Defendants, and did not dispute Dr. Shafiq's Firebase/app findings).

## III.    ARGUMENT

### A.    Legal Standard

Expert testimony is admissible only if the proponent demonstrates that it is relevant and reliable. Under F.R.E. 702 and *Daubert*, district courts must act as gatekeepers to ensure that expert opinion "rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 591–95. The Seventh Circuit has emphasized that this gatekeeping role requires courts to ensure experts employ in litigation the same "standards of intellectual rigor" they use in their professional work, and to exclude opinions that merely present counsel-driven innovations or litigation-only methodologies untethered to accepted practice. *See, e.g.*, *Braun v. Lorillard Inc.*, 84 F.3d 230, 234–36 (7th Cir. 1996) (affirming exclusion where expert departed from accepted methods without adequate justification, noting *Daubert* aims to prevent hiring "impressively credentialed" scientists from offering paid opinions in litigation not reached using their ordinary professional methods).

The Seventh Circuit has framed the relevant inquiry in three parts: (1) qualifications, (2) reliability of methodology, and (3) relevance/fit to the matter at hand. An expert must apply a reliable methodology tied to the facts of the case, and courts are instructed to exclude opinions that are connected to the record only by the expert's *ipse dixit*, unsupported by facts and analysis, as well as those that do not "fit" the issues to be decided. *Gopalratnam*, 877 F.3d at 779–81; *Metavante*, 619 F.3d at 760–61; *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 344–45 (7th Cir. 1995). The Seventh Circuit has further directed courts to exclude experts that provide only conclusory "bottom line" opinions or fail to articulate and apply recognized principles to case-specific facts. *See Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 536–38 (7th Cir. 2000)

6

(affirming exclusion where expert proposed alternative design without testing, analysis, or industry support, characterizing the opinion as "subjective belief or unsupported speculation"); *Chapman v. Maytag Corp.*, 297 F.3d 682, 686–89 (7th Cir. 2002) (reversing verdict where expert's novel "resistive short" causation theory lacked testing, peer review, error rates, or general acceptance and thus did not meet *Daubert*'s reliability factors); *Braun*, 84 F.3d at 234–36 (excluding novel testing method on tissue where expert failed to adhere to accepted methodologies or to provide scientific grounding for departure).

As an application of these principles, the Seventh Circuit also has specifically recognized that experts who fail to test the actual product, platform, or configuration at issue, when such testing is feasible, should be excluded because their opinions are not "tied to the facts" and are methodologically unsound. *Gopalratnam*, 877 F.3d at 781; *see Kirk v. Clark Equip. Co.*, 991 F.3d 865, 873–77 (7th Cir. 2021) (affirming exclusion where expert neither tested nor inspected the loader or similar equipment and failed to substantiate assumptions about load weight; court stressed absence of testing, peer review, and failure to rule out alternatives); *Bourelle*, 220 F.3d at 536–38 (importance of testing in alternative design cases). Where an expert's report consists of generic assertions or is repurposed from other matters without case-specific analysis, exclusion is appropriate under Rule 702 and *Daubert*. *See Haley v. Kolbe & Kolbe Millwork Co.*, 863 F.3d 600, 611–13 (7th Cir. 2017) (affirming exclusion where experts' methods and analyses were not reliably applied to the facts and failed *Daubert*'s testing, standards, and general-acceptance factors); *Chapman*, 297 F.3d at 686–89 (excluding litigation-driven theory lacking case-specific testing or scientific support); *Bourelle*, 220 F.3d at 536–38 (same). And even where an expert is otherwise qualified, testimony that is irrelevant to the claims or defenses—because it addresses different technologies, platforms, or legal theories—should be excluded under F.R.E. 401 and 402, as well

7

as F.R.E. 403 if the risk of confusion or waste of time outweighs any probative value. *Deimer*, 58 F.3d at 344; *Constructora*, 2020 WL 13896487, at *7; *accord Kirk*, 991 F.3d at 873–76 (excluding opinions that did not reliably connect general literature and assumptions to the specific equipment and conditions at issue).

## B.    Mr. Vint's opinions are irrelevant.

The core issue for class certification is whether Defendants' specific websites, patient portals, and mobile app—as actually configured and deployed during the class period—transmitted identifiable PHI to Google in a manner amenable to classwide proof. Rather than test Defendants' actual systems, Mr. Vint tested Medicare.gov and BreakthroughT1D.org, which he baldly asserts represent the same configuration as Defendants', relying on hypothetical browser settings, add-ons, and generic industry materials. This approach is not tied to the facts of this case and therefore fails Rule 702's relevance or "fit" requirement. *See* Vint Report ¶¶ 72–76, 77–79, 85–116 (testing Medicare as proxy and relying on hypotheticals); *Deimer*, 58 F.3d at 344. In his deposition, Mr. Vint acknowledged as much, explaining that there are two appropriate methods to test the operation of tracking technology on a particular website, and he followed neither. Vint Dep. Tr. 97:8-24, 112:5–14.

This is precisely the kind of disconnect the Seventh Circuit and district courts in this Circuit have identified as disqualifying an expert under Rule 702: expert opinions must be grounded in reliable methods applied to "the facts of the case," not to a proxy or hypothetical scenario divorced from the record. *Gopalratnam*, 877 F.3d at 779–83 (affirming exclusion where expert failed to tie methodology to the device and data at issue and did not reliably apply principles to case-specific facts); *Haley*, 863 F.3d at 611–12 (upholding exclusion where experts' methods were not "reliably applied" to the actual products and conditions at issue); *Chapman*, 297 F.3d at 687–88 (reversing

admission where expert offered novel, untested theory not grounded in the record or validated by testing).

The *Constructora Mi Casita* case is directly applicable and instructive here. In *Constructora*, the court addressed an expert opinion proffered by the plaintiff in which the expert prepared a conceptual cost-of-repair estimate using data and assumptions based on U.S. labor and materials, despite the project's location in Mexico. *Id.* at *2–3. The court held the expert's testimony squarely inadmissible under F.R.E. 702 and *Daubert*, as well as F.R.E. 403, because his opinion did not reliably apply accepted principles to the case's facts, did not follow the expert's own methodological principles, and would be unhelpful and confusing to the jury given its misfit to a Mexico-based repair project. *Id.* at *5–7. As the court explained:

- The expert Mr. Gallagher's testimony lacked "a foundation of sound and sufficient data" because the construction project at issue "exists in Mexico—some 120 miles into Mexico from the United States border. … Notwithstanding that, [Mr. Gallagher] assumes only U.S. labor and materials based on a 2014 scope of work from Mi Casita. … An opinion witness can make assumptions, but those assumptions need some grounding in the record or his expertise. *See Tuf Racing Prods., Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000); *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 165 (S.D. Ind. 2009) (citing *Elcock v. Kmart Corp.*, 233 F.3d 734, 756 (3d Cir. 2000)). That does not exist here." *Id.* at *5.

- Additionally, the expert "has not followed his own method. To prepare a conceptual estimate, Mr. Gallagher testified that he would need to consider where the work would be done. That's Mexico, not the United States. … ***Focusing on his methodology rather than his conclusion, as the court should, see Winters v. Fru-Con Inc., 498 F.3d 734, 742 (7th***

*Cir. 2007), Mr. Gallagher thus abandoned the method for preparing conceptual estimates that he admits is expected in his professional work.* … That underscores his unreliability." *Id.* at *6.

- Further, the expert's opinion was unhelpful because it "does not reliably guide the jury to answer the question it must: what the reasonable cost of repairing all plumbing at the condominium resort in Mexico might be if the plumbing universally has a defect. Perhaps his opinion might reliably serve a jury for a project in the United States, perhaps it might reliably serve a jury who reasonably must assume 100 percent U.S. labor for a repair project in Mexico (say one near the border confined to U.S. labor), but his opinion does not fit this case. … Instead, he would introduce confusion at trial and invite the jury to guess at repair cost based on U.S. labor for this project some 120 miles into Mexico. *See, e.g.*, *Owens v. Auxilium Pharms., Inc.*, 895 F.3d 971, 973 (7th Cir. 2018) (excluding testimony where the expert relied on an assumption not based on evidence and the testimony did not fit the facts of the case)." *Id.* at *7.

Mr. Vint's opinions here commit the exact same errors as in *Constructora*, and the same result should follow. By substituting different, unrelated websites and hypothetical configurations for Defendants' actual websites and configurations, Mr. Vint's opinions lack the Rule 702 "fit" necessary to assist the trier of fact. *See id.*; *Deimer*, 58 F.3d at 344–45 (excluding expert *ipse dixit* untethered to the case facts).

In contrast, Dr. Shafiq provides the necessary, case-specific analysis through hands-on testing of HSHS's and Prevea's actual websites, patient portals, and app. Shafiq Report ¶¶ 42–47, 66–68. Because Mr. Vint did not test the actual HSHS/Prevea platforms, he cannot meaningfully dispute Dr. Shafiq's specific findings on cookie requirements and uniform baseline transmissions.

Vint Report ¶¶ 72–75, 140–46 (no testing of HSHS/Prevea or rebuttal analysis); Vint Dep. Tr. 104:9–105:13, 111:5–112:14, 118:9–14, 138:2–139:13 (acknowledging he did not test Defendants' websites or portals and confirming he has no packet captures from the HSHS or Prevea portals). Courts in this circuit reject expert critiques that are not applied to the actual systems or products at issue and that fail to replicate or test the operative configuration. *See Kirk*, 991 F.3d at 873–76 (affirming exclusion where expert neither tested nor inspected the actual product and failed to apply principles to case-specific conditions); *Bourelle*, 220 F.3d at 536–38 (affirming exclusion where expert did no testing, had not observed the product under the relevant conditions, and offered speculation rather than method-driven analysis). The gulf between Dr. Shafiq's case-grounded testing and Mr. Vint's faulty proxy analysis underscores the lack of Rule 702 "fit" in Mr. Vint's opinions. *Gopalratnam*, 877 F.3d at 781–83.

Likewise, Mr. Vint's failure to use Defendants' Google Analytics property identifiers and configuration severs the link between his opinions and the questions to be decided, which concern what configurations Defendants actually implemented and what data they actually transmitted to Google. Dr. Shafiq aligned his testing and analysis to Defendants' own GA implementations and specific property identifiers, enabling attribution of observed transmissions to Defendants and evaluation of commonality. *See* Shafiq Report ¶¶ 42–47, 66–68. Mr. Vint, by his own admission, did not conduct such testing. *See* Vint Dep. Tr. 104:9–105:4; Vint Report ¶¶ 72–75, 140–46, 149–53 (no GA-ID-based testing or GA data analysis). Testimony that is not anchored in the actual properties and data at issue does not assist the trier of fact and fails F.R.E. 702 fit. *Deimer*, 58 F.3d at 344. Indeed, the Seventh Circuit has consistently held that experts must substantiate their analysis with the pertinent data and configurations, rather than assume key facts or substitute generalities. *See Kirk*, 991 F.3d at 875–77 (excluding opinion where expert assumed critical facts,

failed to examine the actual equipment, and did not rule out obvious alternatives); *Chapman*, 297 F.3d at 687–88 (excluding untested, speculative theory). Expert opinions that bypass the pertinent datasets and configurations lack probative value on the questions presented and risk confusing the issues, warranting exclusion. *Gopalratnam*, 877 F.3d at 781. The Seventh Circuit has emphasized that Rule 702 requires experts to "reliably appl[y] the principles and methods to the facts of the case," and courts act within their discretion to exclude analyses that sidestep the actual data and configurations at issue. *Haley*, 863 F.3d at 611–12 (affirming exclusion where experts did not conduct appropriate testing tied to the product and failed to provide a reliable, fact-grounded methodology). Mr. Vint's opinions roundly fail this test.

Mr. Vint also devotes substantial analysis to Facebook's Pixel and variables unique to Facebook, yet Plaintiffs did not seek certification of any Facebook-related class here, rendering that discussion inapposite to the issues the Court must decide and creating a risk of undue consumption of time and confusion. *See* Vint Report ¶¶ 32–35, 88–116, 124–25; Vint Dep. Tr. 31:18–22. Courts in this circuit exclude expert opinions that do not fit the issues to be decided. *Constructora*, 2020 WL 13896487, at *7; *Gopalratnam*, 877 F.3d at 781; *Deimer*, 58 F.3d at 344; *accord Kirk*, 991 F.3d at 873–76 (excluding opinions not reliably tethered to the product and conditions actually at issue). Where, as here, an expert's analysis addresses a different technology stack and a non-certified theory, exclusion is warranted to prevent confusion under Rules 401 and 403.

**C.    Mr. Vint's opinions are unreliable and risk confusion at trial.**

Many of the same defects that render Mr. Vint's opinions irrelevant also render them unreliable—his methods are not applied to the facts of this case and rest on speculation rather than case-specific testing or data. *See* Vint Report ¶¶ 72–79, 85–116, 140–53 (proxy testing and

hypotheticals, not HSHS/Prevea-specific analysis). Rule 702 requires that expert opinion rest on a reliable foundation and be relevant to the task at hand, and courts focus on principles and methodology—not conclusions. *Daubert*, 509 U.S. at 591–95; *Metavante*, 619 F.3d at 760–61. Consistent with these requirements, the Seventh Circuit has held that "bottom line" opinions that are not grounded in a reliable, case-tethered methodology should be excluded. *See Bourelle*, 220 F.3d at 536–38 (affirming exclusion where expert offered untested, unsupported alternative design and warnings untethered to the product and setting at issue); *Chapman*, 297 F.3d at 686–89 (reversing verdict where expert's novel theory lacked testing, peer review, error rates, or general acceptance and thus amounted to speculation rather than science).

It was plainly feasible to test the HSHS and Prevea websites, portals, and app in their operative configurations and to use Defendants' GA identifiers and settings: Dr. Shafiq did so in, among other things, confirming that cookies are required to access the portals and that a uniform baseline of common information is transmitted across devices and browsers. Indeed, Mr. Vint acknowledged in his deposition that his two recommended methodologies for evaluating how Google Analytics operates would be either (1) testing the live version of the website in question or (2) testing a recreated historical version of the website, the latter of which he acknowledged is exactly what Dr. Shafiq did here. Vint Dep. Tr. 99:2–23. By contrast, testing different websites and inferring conclusions about Defendants' implementations is not an acceptable method for determining what HSHS/Prevea's systems actually transmit, and opinions based on such proxy testing are not tied to the facts of the case. Courts in this Circuit exclude expert opinions that do not reliably apply methods to the facts and instead offer bottom-line speculation. *Gopalratnam*, 877 F.3d at 781; *Metavante*, 619 F.3d at 761; *Kirk*, 991 F.3d at 873–77 (affirming exclusion where the expert did not test or inspect the subject equipment and failed to tie generic assumptions to the

actual product and conditions). Where, as here, the pertinent websites could be (and were, by Plaintiffs' expert) examined and tested directly, reliance on surrogate platforms is methodologically unsound. *Bourelle*, 220 F.3d at 536–38.

Likewise, a reliable assessment of whether Google Analytics collected or received baseline identifiers from Defendants must be anchored in the actual GA configurations and datasets at issue; Mr. Vint did not test or validate against Defendants' GA identifiers and did not review the available GA data produced in discovery, whereas Dr. Shafiq did. *Compare* Vint Report ¶¶ 140–46, 149–53 (no GA ID/data analysis), *with* Shafiq Report ¶¶ 42–47, 66–68 (GA ID-anchored testing and GA data analysis). *See also* Vint Dep. Tr. 104:9–105:13, 111:5–112:14, 118:9–14 (testifying he did not review Defendants' Google Analytics dashboards or settings; admitting he did not test Defendants' websites; and stating he did not review the produced GA logs and they had no impact on his analysis). This is not a mere weight issue but a foundational flaw because it leaves Mr. Vint's conclusions unsupported by the case record and untethered to relevant data. *Deimer*, 58 F.3d at 344–45 (affirming exclusion of expert's testimony where expert "did not conduct any studies or analysis to substantiate his opinion" and "proffered unverified statements that were unsupported by any scientific method"); *Kirk*, 991 F.3d at 873–77 (expert must substantiate opinions with testing or data tied to the product at issue and address obvious alternatives); *Haley*, 863 F.3d at 611–13 (affirming exclusion where methods were not reliably applied to the facts and *Daubert* factors were unmet).

Mr. Vint's generalized "variability" narrative is contradicted by Plaintiffs' case-specific evidence showing enforced cookie requirements for portal access and consistent baseline transmissions across devices and browsers, which Mr. Vint did not test on the actual HSHS/Prevea implementations. Shafiq Report ¶¶ 66–68 (uniform baseline across devices/browsers and cookie

requirement); Vint Report ¶¶ 67–71, 77–79, 85–116 (general variability assertions without HSHS/Prevea testing). Courts exclude generalized theories that are not supported by case-specific testing when the platform shows uniform behavior. *Gopalratnam*, 877 F.3d at 781; *Chapman*, 297 F.3d at 686–89.

Mr. Vint minimizes the undisputed transmissions of IP addresses in request headers and opines that transmissions to Google Analytics cannot be correlated to a real-world identity, yet he provides no analysis of Defendants' GA property settings—including any IP anonymization configuration—and concedes no knowledge of whether anonymization was enabled during the class period. Vint Report ¶¶ 27, 140–46, 149–53 (acknowledging header IPs but no GA settings analysis); Vint Dep. Tr. 17:14–18:5, 19:4–21, 76:2–22, 104:9–105:10, 145:24–146:4 (admitting he did not review Defendants' Google Analytics dashboards or settings; acknowledging an IP address is included in every transmission; explaining that IP "anonymization" is a configurable feature in UA3 but offering no analysis of Defendants' GA property settings and no knowledge of whether anonymization was enabled during the class period). The unreliability of Mr. Vint's testimony on this point is confirmed by his unwillingness to acknowledge that IP addresses could be considered an identifier even though they are defined as such under HIPAA. Vint Dep. Tr. 147:6-15. Courts exclude *ipse dixit* such as Mr. Vint's where the opinion is connected to the record only by the expert's say-so or rests on untested assumptions. *Haley*, 863 F.3d at 611–13 (lack of testing, standards, and general acceptance warranted exclusion); *Bourelle*, 220 F.3d at 536–38 (same); *Braun*, 84 F.3d at 234–36 (excluding litigation-driven methodology lacking adherence to accepted methods).

Finally, as noted, Mr. Vint devotes extensive analysis to the Facebook Meta Pixel even though Plaintiffs did not seek certification of any Facebook-related class. Vint Report ¶¶ 32–35,

88–116, 124–25. This underscores the template-like, one-size-fits-all character of his approach. Opinions that consist of bottom-line assertions unmoored from testing of the actual systems and data at issue are the ipse dixit that courts exclude under Rule 702. *Gopalratnam*, 877 F.3d at 781; *Metavante*, 619 F.3d at 761. The Seventh Circuit's decisions confirm that such litigation-only, generic overlays are inadmissible when the expert neither examines nor tests the relevant configuration and fails to fit the analysis to the case. *Kirk*, 991 F.3d at 873–77; *Haley*, 863 F.3d at 611–13; *Bourelle*, 220 F.3d at 536–38; *Chapman*, 297 F.3d at 686–89.

## IV.    <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs respectfully request that the Court exclude Mr. Vint's report and testimony in their entirety.

Dated: November 10, 2025

By: *Electronically signed by Alex Phillips*
Alex Phillips Samuel J. Strauss
Raina Borrelli (*pro hac vice*)
STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
aphillips@straussborrelli.com
sam@straussborrelli.com
raina@straussborrelli.com

Foster C. Johnson
Joe Ahmad  (*pro hac vice*)
Mark Holden  (*pro hac vice*)
AHMAD, ZAVITSANOS & MENSING, PLLC
1221 McKinney Street, Suite 2500
Houston, TX 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
fjohnson@azalaw.com
joeahmad@azalaw.com
mholden@azalaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

**<ins>CERTIFICATE OF SERVICE</ins>**

I, Alex Phillips, hereby certify that on November 10, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system

DATED this 10th day of November, 2025.

STRAUSS BORRELLI PLLC

By: *<ins>Electronically signed by Alex Phillips</ins>*
    Alex Phillips
    STRAUSS BORRELLI PLLC
    980 N. Michigan Avenue, Suite 1610
    Chicago, IL 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109
    aphillips@straussborrelli.com

17